## Jamison *vs* Tudor.

ERROR TO THE ESTILL CIRCUIT.

*Motions.   Sheriff.   Conveyances.*

JUDGE MARSHALL delivered the opinion of the Court.

IN May, 1839, an execution upon replevin bond, against Jamison, &c. was levied on Jamison's land by Morton M. Price, Deputy Sheriff for B. Straughn, Sheriff of Es-

*Margin notes:*

JAMISON
*vs*
TUDOR.

MOTION.

Case 98.

*April* 29.

The case stated.

till County. At a sale of the land, in July following, by the same deputy, Edward Walton became the purchaser at the price of ten dollars, which, as the return states, entitled the execution to a credit of nine dollars and fifty cents. In August, 1841, Edward Walton, by a written order, directed to Morton M. Price, authorized him to convey the land to Leroy Tudor; and in July, 1842, Morton M. Price, styling himself Sheriff of Estill County, executed a deed to Tudor, in which, after reciting the execution and levy and sale by Morton M. Price, then deputy of Straughn, and the transfer to Tudor, he again styling himself Sheriff, &c. conveys the land in the usual terms, and signed his name to the deed without any designation of office. At the succeeding term of the Estill Circuit Court, Jamison moved to quash the deed, on the grounds: 1. That it was improperly made to Tudor, who was not the purchaser. 2. That no certificate was produced to the Sheriff who made the deed, from the Sheriff who made the sale, showing that either Walton or Tudor was the purchaser, &c. 3. That the sheriff who made the deed had no authority to make it. It was admitted on the motion that Morton M. Price was deputy of the Sheriff, Straughn, at the time of the levy and sale, and that he was himself Sheriff when he made the deed. Upon these facts the Court refused to quash the deed, and the propriety of that decision is the only question to be now considered.

No objection being made to the sale, which appears to have been regular and valid, the purchaser or his transferee was certainly entitled to a proper conveyance of the title of Jamison, and we do not perceive that the latter has any interest which would authorize him to question, by direct proceeding, either in Law or Chancery, the validity or regularity of the deed which has been made for that purpose. He has, it is true, an interest to retain the possession of the land as long as he can, although it has been regularly sold under execution. But even this interest, if it should be regarded by the law, would not, so far as appears, be subserved by a quashal of the deed. For if it be invalid it could not avail as evidence of title in an action of ejectment, brought to avail him; whereas, if it should be quashed for invalidity, on his motion, the

One whose land has been regularly sold by execution has no such interest in the regularity of the conveyance of it by the officer as will authorize him to move to quash a deed made therefor.

party entitled to the conveyance might undoubtedly obtain one, free from the objections which might prevail against this. It is said, that if the deed be invalid, the motion on the part of Jamison should be entertained in analogy to the proceeding in Chancery, to procure the cancelment and surrender of void instruments, which might annoy or embarrass the complainant. But if, in such a case, it should appear upon the face of the bill that the holder of the instrument alledged to be invalid, was entitled to a valid one of the same tenor, we presume the bill would be dismissed upon demurrer, and that the Chancellor would never decree the surrender of the invalid instrument, but upon the terms of supplying one which would be effectual. If the deed were offered as evidence of title in action of ejectment against the debtor, he would have the right to question its validity at every point, because, according to the principles of that action, it would be incumbent on the plaintiff to show a valid conveyance, and his right to have one would be immaterial. But in the present attitude of the case he seems to be volunteering objections to a deed with which the grantee is content, and making a question between the purchaser and his transferee, in which they alone are interested. We are therefore strongly inclined to the opinion that he had no right to make the motion, and that on this ground it was properly overruled.

If, however, we should be mistaken in this conclusion, we are satisfied that the Court decided correctly upon the merits of the case. 1. The 8th section of the act of 1798, relating to the sale of lands under execution, (*Stat. Law*, 1463,) which directs that the Sheriff shall convey the same, (*i. e.* the land sold,) to the purchaser, should be understood as intending to designate the Sheriff as the proper person to make the conveyance, to the person entitled, and not as intending to restrict the conveyance to the person who actually made the highest bid and was thus actually the purchaser at the sale. The language of the act was adapted to the case as it generally exists; and as there is no evidence of an intention to preclude either the highest bidder from the common right of transferring his interest, or the transferee from the right of re-

*Margin notes:*

JAMISON
*vs*
TUDOR.

The highest purchaser of land, sold by Sheriff under *fi. fa.* may transfer his purchase, and a deed from the Sheriff to such transferee will be valid.

JAMISON
*vs*
TUDOR.

ceiving the conveyance directly from the Sheriff, we think. the word 'purchaser' should be understood as embracing a subsequent, as well as the original purchaser. And this is a sufficient answer to the first objection.

A conveyance of land, sold by a Deputy Sheriff, may be properly made by him after he ceases to be such, and become high Sheriff.

2 & 3. The second and third objections are founded upon the fact that Morton M. Price was in truth the Sheriff at the time of making the deed, and the successor in office of that Sheriff, whose deputy he was, at the time of making the levy and sale, and upon the additional fact that in making the deed he styles himself Sheriff and not deputy. And as the act of 1809, (*Stat. Law,* 1467,) authorizes the successor of the Sheriff, who makes a sale, to convey to the purchaser, on his producing the certificate or receipt of the former Sheriff, of the actual purchase and payment of the full amount, &c. and also a plat of said land, which it is said was not done in this case, it is contended that the succeeding Sheriff was not authorized to make the conveyance. But the deed recites the levy and sale by the maker, as deputy Sheriff, and is signed by him, without designation of office; and we are of opinion that, notwithstanding the fact that he calls himself, in the body of the deed, Sheriff, and was actually Sheriff at the time, the deed may and should operate as his act as deputy; that is, in the same character in which, as the deed and returns show, he had commenced the execution, and in which it was his right and duty to perfect it by conveying the land sold. We do not admit that a deed made by the deputy who had made the levy and sale, and was authorized to make the conveyance, should not be regarded as the deed of the deputy, because he calls himself Sheriff, and was in fact Sheriff at the time of its execution. And if its being the deed of the grantor, as Sheriff, and not as deputy, would necessarily render it void, this should furnish as strong argument for regarding it, if possible, as having been made in the latter and not in the former character. On the ground, therefore, that the recitals of the deed show in what character it should be made, that the words "Sheriff of Estill County" may be considered as mere description of the person, and that the word "Sheriff," itself, might, when taken in connection with the context, be regarded

not as describing a different office from that of Deputy Sheriff, but as a general designation, restricted by the context to a particular meaning. We think the deed should be regarded as the act of the deputy. If the grantor had not been Sheriff in fact, this construction could scarcely have been questioned, and the fact that he was Sheriff does not necessarily exclude it.

But if the deed must be regarded as the act of the Sheriff, as the successor in office of him under whom the levy and sale was made, still, as the succeeding Sheriff was the same individual who had done these acts as deputy, and had himself made the return which, as the sale must have been made for cash, showed not only the fact of the purchase but also the payment of the money, and as that return refers from the boundaries of the land sold to a previous deed of record, we are of opinion that all the facts required to confer the authority on the succeeding Sheriff not only existed but were sufficiently evidenced to him; and that the requisites of the act of 1809, which were intended to prevent imposition on the succeeding Sheriff, or hasty action by him, were substantially though not literally complied with. There must in this case, as in others, be some presumption that the Sheriff has done his duty. And whatever might be the case where the succeeding Sheriff was a different person from the deputy who had returned the levy and sale, we think the return of the deputy might be regarded by himself, when afterwards principal Sheriff, as a sufficient certificate or receipt of the fact of the purchase and the payment of the money—and the reference to the boundaries of a deed of record certainly dispensed with the production of a plat. We do not regard this case therefore as coming directly within the authority of the case of *Trimble* vs *Breckenridge*, (4 *Bibb*, 479,) if that case be admitted to be a correct exposition of the same.

Wherefore, the judgment is affirmed.

*Turner* for plaintiff: *Caperton* for defendant.

A Sheriff who had, whilst acting as deputy, sold land in the same county, might lawfully convey to the purchaser, or his transferee, upon his knowledge of the sale and payment of the purchase money, & appearing from his own return without certificate of purchase or survey.